UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL HENDERSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv1621 (MRK) |
| | : | |
| JOHN WILLIAMS, et al., | : | |
| | : | |
| Defendants. | : | |

**RULING AND ORDER**

Plaintiff Daniel Henderson brings a 42 U.S.C. § 1983 suit against Defendants John Williams, the Meriden Police Department, the City of Meriden, Robert Milsagle, R. Baustein, Detective Rivera, Officer Rodriguez, and Officer Scheen (collectively "Defendants").

The following motions are pending: Plaintiff Daniel Henderson's Motion to Compel [doc. # 66]; Mr. Henderson's Motion to Amend Second Amended Complaint [doc. # 73]; Mr. Henderson's Motion to Serve Excess Interrogatories [doc. # 76]; Mr. Henderson's Motion for Sanctions [doc. # 81]; Mr. Henderson's Motion to Withdraw Motion for Sanctions [doc. # 93]; and Defendants' Motion to Withdraw Opposition to the Motion to Amend [doc. # 94].

**I.**

The issues addressed in these motions arise from events that occurred during the execution of a search warrant at 22 Lake Road, Middlefield, Connecticut ("the Property"). Defendants had conducted an investigation of a club owned and operated by David Henderson—

plaintiff Daniel Henderson's brother.[1] A warrant was issued and executed for a search of David Henderson's residence on the belief that the Property was being used (1) to promote prostitution in the first degree, in violation of Conn. Gen. Stat. § 53a-86; and (2) for racketeering, in violation of Conn. Gen. Stat. § 53-396. No evidence was taken from the Property in the course of the search. David Henderson later pled guilty to promoting prostitution in the second degree, in violation of Conn. Gen. Stat. § 53a-87; conspiracy to promote prostitution, in violation of Conn. Gen. Stat. § 53a-48; and corrupt organization and racketeering (CORA), in violation of Conn. Gen. Stat. § 53-395.

Mr. Henderson alleges, *inter alia*, that the Defendants searched his and—anticipating at least one of the edits in his anticipated Third Amended Complaint—his mother's units while executing a search warrant that should have been limited to his brother's unit, thereby violating his and his mother's constitutional rights. The crucial factual question for the determination of these motions is whether the Defendants had probable cause to believe that the Property was a single-family dwelling, albeit one divided into three units, or if they knew or should have known that it was a multi-use residence comprised of three separate dwellings. It is uncontested that Mr. Henderson and his children live in the basement unit; Genevieve Henderson, his mother, lives in the first-floor unit; and David Henderson and his family live in the second-floor unit.

## II.

Mr. Henderson's Motion to Compel [doc. # 66] asks the Court to order Defendants to produce, in compliance with his tenth request for production, "copies of all evidence, documents, and/or reports used to obtain the search warrant executed by Defendants on January 20, 2009

---

[1] To distinguish between plaintiff Daniel Henderson and his brother David Henderson, the Court will refer to the former as "Mr. Henderson" and to the latter as "David Henderson."

regarding 22 Lake Road." *Id.* at 26 (Defs.' Resps. to Reqs. for Production Dated May 20, 2011). As subsets of this request, Mr. Henderson asks the Court to order Defendants to produce (A) evidence that the Property is a single family home; (B) evidence that there was probable cause to believe that the Property was being used to promote prostitution; (C) information regarding informants who provided information used in the search warrant; and (D) information regarding the nexus between undercover police action and the search on the Property.

A.

The search warrant was issued "[f]or 22 Lake Road Middlefield Connecticut. That 22 Lake Road is a single family tan in color wood sided two story home with a large ocean view styled bay window. The home has lots of windows and an interior stairwell that leads to a loft viewable from outside." *Id.* at 8 (Application for Search and Seizure Warrant). Mr. Henderson now requests evidence that the Property is a single-family home. However, for the purposes of this suit, it is immaterial whether the Property is *actually* a single-family home; rather, the relevant question is whether the Defendants had reason to believe the residence was a single-family home when requesting and executing the search warrant.

Mr. Henderson argues that the Property is not a single-family home, but rather that it is a multi-use residence divided into three separate units. In support of his claim, Mr. Henderson submits a sewer use charge, which demonstrates that in 2010 the Office of the Tax Collector charged Genevieve Henderson taxes for three units. *See id.* at 27 (Sewer Use Charge). In response, Defendants state that many factors are taken into account in establishing charges for the use of a sewer system, including "'the number of plumbing fixtures connected with the sewerage system'" and the "'number of persons customarily using the property served by the sewerage system.'" Defs.' Resp. to Mot. to Compel [doc. # 74] at 4 (quoting Conn. Gen. Stat. § 7-

255). Although not stated explicitly, the Defendants clearly imply that in establishing sewer charges for the Property, the number of people living there and number of bathrooms was likely more important than whether the Property was technically a multi-use residence.

More relevantly, Mr. Henderson argues that the Defendants knew or should have known that the Property was a multi-use residence. He mentions an alleged conversation between a State Trooper and Defendants regarding the Property's status and observes that the fact that it is a multi-family residence is clearly noted on the Middlefield website and in the town's records. *See* Pl.'s Reply to Mot. to Compel [doc. # 84] at 6.

Defendants do not contest that the Property "is divided into three separate areas where various members of the Henderson family live." Defs.' Resp. to Mot. to Compel [doc. # 74] at 4. They nonetheless maintain that evidence in support of the fact that the Property is a single family home is well documented in the land records. *See id.* (citing Mot. to Compel [doc. # 66] at 23 (Case/Incident Report) (noting that the Property is listed as a single family structure in the Middlefield tax assessors' office)).

Defendants have also stated in response to production requests that the Property is listed as a single-family home with the Town of Middlefield and that "TFC. T. Topulos, a member of the Crime Suppression Unit and the Resident Trooper for Middlefield on January 20, 2009, had been to the [Property] on multiple occasions and reported to CSU that the home was divided into three separate areas when [sic] various members of the Henderson family lived." Defs.' Resp. to Mot. to Serve Excess Interrogatories [doc. # 78] Ex. A at 4 (Defs.' Resps. to Reqs. for Production Dated May 20, 2011).

Whether the Defendants had reason to believe that the Property was a single-family residence is material to this case, and the Defendants will therefore produce copies of all

evidence, documents, and/or reports used to determine that the Property was a single-family residence. If there are no such documents aside from the search warrant—as might be inferred from Defendants' responses to Mr. Hendreson's requests for production, *see* Mot. to Compel [doc. # 66] at 26 (Defs.' Resps. to Reqs. for Production Dated May 20, 2011), and from the Defendants' other responses to requests for production, *see* Defs.' Resp. to Mot. to Serve Excess Interrogatories [doc. # 78] Ex. A at 4 (Defs.' Resps. to Reqs. for Production Dated May 20, 2011)—Mr. Henderson may attempt to learn of such reasons through depositions and other means of discovery.

B.

Mr. Henderson requests evidence that corroborates Mr. Williams' statement that there was probable cause to believe that the Property was being used to promote prostitution. Given the results of the investigation of David Henderson's club and his subsequent guilty plea, the Court assumes without deciding that there was probable cause to believe that David Henderson's residence was being used to promote prostitution. However, whether the police had probable cause to search David Henderson's home is immaterial to Mr. Henderson's case before the Court today.

The question relevant to this case is whether, if the Defendants had no reason to believe that the Property was a single-family residence, there was probable cause to believe that Mr. Henderson's and his mother's units were linked to promoting prostitution. Accordingly, Defendants will produce copies of all evidence, documents, and/or reports used to determine that Mr. Henderson's and his mother's units, as distinguished from David Henderson's residence, were linked to promoting prostitution. If there are no such documents aside from the search warrant—as might be inferred from Defendants' response to the tenth request for production, *see*

5

Mot. to Compel [doc. # 66] at 26 (Defs.' Resps. to Reqs. for Production Dated May 20, 2011)—Mr. Henderson may attempt to learn of such reasons through depositions and other means of discovery.

Alternatively, the parties may file a joint stipulation that Defendants had no probable cause to search Mr. Henderson's or his mother's units except for their belief that the Property was a single-family dwelling. In other words, the parties could stipulate that the Defendants did not have reason to believe that Mr. Henderson or his mother were promoting prostitution or racketeering. Such a stipulation would render this subset of the discovery request essentially moot, as the only remaining issue would be whether the Defendants had reason to believe that the Property was a single-family dwelling.

## C.

There appears to be some confusion as to what Mr. Henderson is requesting regarding informants: although his production request is broad, in his Motion to Compel [doc. # 66], Mr. Henderson clarifies that he is interested in gathering information on who the informants are who provided the information relied upon in the search warrant. Defendants seem to understand this as a request for evidence solely regarding the identities of the undercover police detectives. *See* Defs.'s Resp. to Mot. to Compel [doc. # 74] at 5-6. In his reply, Mr. Henderson notes that he has "<u>no objection</u>" to the Defendants producing evidence regarding these informants to the Court *ex parte*. Pl.'s Reply to Mot. to Compel [doc. # 84] at 7 (underlining in original).

The Supreme Court has long recognized the "informer's privilege"—the "Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353

U.S. 53, 59 (1957). The Government has a legitimate public policy interest in preventing the disclosure of the names of confidential informants. *See id.* at 61 n.9.

The informer's privilege applies in civil, as well as criminal cases, although there is "ample authority" for the proposition that the privilege is stronger in civil litigation. *In re United States*, 565 F.2d 19, 22 (2d Cir. 1977). However, the privilege is not absolute. *Id.* at 22-23. Where the disclosure is "essential to a fair determination of the issues in the case, the privilege cannot be invoked." *Id.* (citing *Roviaro*, 353 U.S. at 60-61). The privilege depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62. The court must balance "the public's interest in protecting the flow of information to law enforcement personnel against the public's interest in a fair determination of the merits of a case." *Ayala v. City of New York*, No. 04 Civ. 1102 (DC), 2004 WL 2914085, at *1 (S.D.N.Y. Dec. 16, 2004) (citing *Roviaro*, 353 U.S. at 60, 64).

The burden of establishing the need for disclosure is on the person who seeks such disclosure. *See In re United States*, 565 F.2d at 23. Identification must not merely be of "some assistance"—rather, disclosure should be allowed "only after the trial court has made a determination that plaintiff's need for the information outweighs the defendant's claim of privilege." *Id.* The district court has considerable discretion in reaching its determination. *See Cullen v. Margiotta*, 811 F.2d 698, 716 (2d Cir. 1987). "Disclosure is most appropriate when the informant is 'a key witness or participant' or when the informant is integral in the case." *Ayala*, 2004 WL 2914085, at *1 (quoting *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988)). The "availability of other means of discovery or investigation, such as depositions or interviews, even if more expensive, weighs against disclosure." *Cullen*, 811 F.2d at 716.

7

Given that David Henderson did plead guilty to charges associated with those supporting the search warrant, Mr. Henderson has failed to carry the burden of demonstrating that the identities and statements of informants who provided information regarding David Henderson is "integral" to Mr. Henderson's case. *See Ayala*, 2004 WL 2914085, at *1.

However, if one or more of these informants made assertions regarding the Property's status as a single-family dwelling or multi-use residence, those statements may be material to Mr. Henderson's case. While it is not entirely clear from the briefing whether such informants may exist, the Court finds that the Defendants must produce the statements of any informers who made assertions regarding the Property's status as a single-family dwelling or multi-use residence. *See Ayala*, 2004 WL 2914085, at *2-3 (finding that the informer's privilege extends to disclosure of the informant's identity, not to the informant's statements).

The parties shall discuss and agree on the details and scope of related discovery. At minimum, Mr. Henderson is entitled to an affidavit, redacted if necessary, regarding such statements. Mr. Henderson is also entitled to depose the affiant as to the information learned from the confidential informant(s) and to discovery as to the reliability of the informant(s), although the scope of this discovery should be limited to establishing the basis for the affiant's belief as to the reliability of the informant(s).

D.

Finally, Mr. Henderson requests information on the nexus between the fact that undercover police engaged the services of prostitutes at David Henderson's club and the subsequent search of the Property. The search warrant provides detailed information on the nexus between the undercover police's actions and the search of David Henderson's property, which again is supported by David Henderson's guilty plea. Again, though, the nexus between

8

undercover police's actions and the issuance and execution of a search warrant of David Henderson's residence is irrelevant to Mr. Henderson's case.

The appropriately modified question here is, if the Defendants had no reason to believe that the Property was a single-family residence, whether there was a nexus between the undercover police's actions and the searches of Mr. Henderson's and his mother's units. Defendants will therefore produce copies of all evidence, documents, and/or reports evidencing a nexus between the undercover police's actions and the subsequent searches of Mr. Henderson's and his mother's units, as distinguished from David Henderson's residence. If there are no such documents aside from the search warrant—as might be inferred from Defendants' response to the tenth request for production, *see* Mot. to Compel [doc. # 66] at 26 (Defs.' Resps. to Reqs. for Production Dated May 20, 2011)—Mr. Henderson may attempt to learn of such information through depositions and other means of discovery.

Alternatively, as noted above, the parties may file a joint stipulation that Defendants had no probable cause to search Mr. Henderson's or his mother's units except for their belief that the Property was a single-family dwelling. Again, such a stipulation would render this subset of the discovery request essentially moot, as the only remaining issue would be whether the Defendants had reason to believe that the Property was a single-family dwelling.

## III.

The Court now turns to Mr. Henderson's Motion to Serve Excess Interrogatories [doc. # 76], in which he requests the Court's permission "to serve defendants interrogatories in excess of 25." *Id.* at 1. Mr. Henderson never states how many interrogatories he plans to serve. In their Response, Defendants note that they would agree "to answer limited interrogatories, requests for production and/or requests for admission." Defs.' Resp. to Mot. to Serve Excess Interrogatories

[doc. # 78] at 1. Mr. Henderson replies that he is requesting evidence that "Defendants can not produce **because it never existed**." Pl.'s Reply to Mot. to Serve Excess Interrogatories [doc. # 87] at 2 (bold in original). Mr. Henderson states that he will attach interrogatories and a request for production to his Reply "that if answered openly, honestly, and without [delay]" would result in a speedy resolution of the issue. *Id.* at 6. However, Mr. Henderson neglects to attach any such document. *See id.*

Because he did not provide a limit to the number of excess interrogatories he requested, and because he failed to attach a limited number of interrogatories and requests for production, Mr. Henderson's Motion to Serve Excess Interrogatories [doc. # 76] is DENIED without prejudice to renewal.

Mr. Henderson is welcome to submit a renewed motion to serve excess interrogatories with an attached list of interrogatories and requests for production. However, the Court cautions Mr. Henderson that it will not grant a motion for discovery requests that are overbroad and immaterial to the case. *See, e.g.*, *Sullivan v. Stein*, 487 F. Supp. 2d 52 (D. Conn. 2007) (Ruling on Mot. to Compel [doc. # 305]). Many of the discovery requests which Mr. Henderson claims have not been adequately answered—namely, all of those relating only to whether there was probable cause to arrest David Henderson and search David Henderson's residence—are not relevant to Mr. Henderson's suit. The central question here is whether Defendants had reason to believe that the Property was a single-family dwelling, not if they had probable cause to search David Henderson's residence.

The Court is confident that both parties understand that, if Defendants fail to produce additional documents on relevant issues, the absence of such documents will be taken into account in deciding dispositive motions or at trial.

## IV.

For the reasons discussed above, Mr. Henderson's Motion to Compel [doc. # 66] is GRANTED IN PART and DENIED IN PART. Mr. Henderson's Motion to Serve Excess Interrogatories [doc. # 76] is DENIED without prejudice to renewal.

Additionally, Defendants' Motion to Withdraw Opposition to the Motion to Amend [doc. # 94] is GRANTED. Mr. Henderson's Motion to Amend Second Amended Complaint [doc. # 73] is therefore GRANTED. Mr. Henderson is directed to docket his third amended complaint on or before December 19, 2011. After filing his revised complaint, Mr. Henderson may submit new discovery requests to Defendants based on the new allegations.

Finally, Mr. Henderson's Motion to Withdraw Motion for Sanctions [doc. # 93] is GRANTED; accordingly, his Motion for Sanctions [doc. # 81] is DENIED as moot.[2]

IT IS SO ORDERED.

/s/   Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: December 5, 2011.**

---

[2] In his Motion to Withdraw Motion for Sanctions [doc. # 93], Mr. Henderson noted that he would file a motion to compel regarding remaining discovery issues that could not be settled during the parties' November 22, 2011 phone conference. *See id.* at 1. Mr. Henderson has not subsequently filed any such motion with the Court in this case, although he has filed a motion to compel in a separate case before the Court, also against John Williams, which refers to the 2011 phone conference. The Court therefore understands that, after this order is issued, there are no pending discovery disputes in *this* case.