UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL HENDERSON, et al., | : | |
| Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:10-cv-1621 (JCH) |
| v. | : | |
| | : | |
| JOHN WILLIAMS, et al., | : | MAY 13, 2013 |
| Defendants. | : | |

**RULING RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT (Doc. Nos. 175, 178)**

The named plaintiffs, Daniel and Genevieve Henderson, allege in the Third Amended Complaint (Doc. No. 207) that the defendants[1] unlawfully entered and searched their residence, defendants Williams and Baustien made false statements under oath, the defendants used excessive force against them, and the defendants improperly searched and confiscated $90,000 in cash from Genevieve Henderson's safety deposit box. Pending are cross-motions for summary judgment. For the reasons that follow, the defendants' Motion is granted in part and the plaintiffs' Motion is denied.

**I.    STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. See Rule 56(a), Fed. R. Civ. P.; In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam)

---

[1]The named defendants in the Third Amended Complaint are John Williams, the Meriden Police Department, the City of Meriden, Milsagle, Baustien, Rivera, Rodriguez and Scheen.

(internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

## II.    STATEMENT OF FACTS[2]

The defendants had information suggesting that David Henderson engaged in prostitution at the 2041 Club, his strip club business. They suspected that David Henderson kept records, money, and other evidence from the prostitution business at

---

[2] The facts are taken from the parties' Local Rule 56(a)1 and 2 Statements and the exhibits provided by both parties. See Docs. No.175, 176, 178, 187, 200.

his home or in a safety deposit box.

    A.    <u>Search of Residence</u>

Genevieve Henderson, David Henderson's mother, owns a home at 22 Lake Road, Middlefield, Connecticut.  Daniel Henderson worked briefly at the 2041 Club.  On January 20, 2009, Daniel, David and Genevieve Henderson all lived in the Lake Road residence, which contained three separate living areas.  Daniel lived in the basement, Genevieve on the first floor and David on the second floor.  All residents indicated their address was 22 Lake Road, no apartment number was indicated by any resident.

Defendants Williams, Milsagle, Baustien, Rivera, Rodriguez and Scheen have completed an initial police officer training program as well as re-certification training in many areas including use of force, weapons training and the law of arrest and search and seizure.  Defendant Williams believed that David Henderson was promoting prostitution at his club.  He also knew from his training and experience that persons engaged in illegal enterprises often keep money and business records at their homes to avoid detection by state and federal tax authorities.  As a result, defendant Williams applied for a search and seizure warrant for David Henderson's home.

At the time of the search, defendant Williams states he believed that 22 Lake Road was a single family residence.  This belief was based on the fact that David Henderson consistently reported his address as 22 Lake Road with no apartment designation.  Connecticut State Trooper Topulos told him that the residence was divided into three living areas.  The assessor information described 22 Lake Road as a single family residence with in-law.  However, the card also indicated "Occupancy 3," <u>see</u> Doc. No. 178-2 at 35, Pl.'s Motion for Summary Judgment, Ex. F, and a sewer tax bill issued

by the Town of Middlefield lists the residence as containing 2.5 units.  See Doc. No. 178-3 at 7.

On January 20, 2009, the defendants executed a search and seizure warrant on 22 Lane Road.  The warrant was issued by a state court judge.  Defendant Williams was not present during the search.  Prior to executing the search warrant, the officers met at a local restaurant.  State Trooper Topulos, who has been to the Henderson home on several occasions, told the officers that the home was divided into three living areas.  He also told the officers that he recently had observed the basement area crowded with Henderson relatives who had a history of police confrontation.  The officers decided to enter all three areas simultaneously.  Defendants Baustien, Rivera, Scheen and Rodriguez entered the first and second floors.  Daniel Henderson was not arrested or charged with any crime as a result of the police entry.  Daniel Henderson alleges that two officers jumped him on his bed in the basement living area, punched him and pulled his hair.  Daniel Henderson and his son were handcuffed.  The woman with him was not handcuffed.  Daniel Henderson was hostile toward the two officers searching his basement living area.  Genevieve Henderson was not injured or physically touched by any officer during the search.

   B. <u>Search of Safety Deposit Box</u>

David Henderson and his associate, Laura Kuhl, were arrested pursuant to an arrest warrant also issued on January 20, 2009.  David Henderson had keys to two safety deposit boxes in his possession when he was arrested.  Ms. Kuhl informed the police that she had cash and records of the prostitution business in a closet in her apartment and consented to have the closet searched.  The police found $20,000.00,

records in the names of Ms. Kuhl and David Henderson and a receipt for a safety deposit box at the Newington branch of the Bank of America.

Defendant Williams obtained search warrants for safety deposit boxes at Bank of America branches in Newington and Meriden. The keys in David Henderson's possession did not fit the box in either branch. The boxes were drilled out and opened.

The safety deposit box in the Meriden branch was in David Henderson's name. The box was empty and had not been used for six months. The box in the Newington branch, in Ms. Kuhl's name, contained $40,000.00 in cash and the title to a vehicle in her name. When questioned following the search, Ms. Kuhl stated that David Henderson had a storage unit that contained items and cash from the business. The defendants contend that Ms. Kuhl stated that David Henderson told her he had $140,000.00 in safety deposit boxes at the Wachovia Bank in Meriden and an unknown bank in Atlantic City, New Jersey, and that the safety deposit boxes might be in Genevieve Henderson's name. No copy of this second statement was provided to the plaintiffs in discovery. See pl's Ex. P, Doc. No. 178-4 at 1

Defendant Milsagle went to the Wachovia Bank. The manager confirmed that at least one of David Henderson's keys belonged to one of their safety deposit boxes and that either David or Genevieve Henderson had rented a safety deposit box at that branch. He would provide no further information. Defendant Williams then prepared an affidavit for a search warrant for the safety deposit box located at the Meriden branch of Wachovia Bank in the name Daniel Henderson or Genevieve Henderson. A judge issued the warrant on January 20, 2009.

One of the keys in David Henderson's possession fit the safety deposit box

registered to Genevieve Henderson. Her name was the only name on the signature card. Genevieve Henderson received the safety deposit box as a gift when she refinanced her house with Wachovia Bank in 2008. David Henderson was incarcerated at the time she received the safety deposit box. The defendants seized $90,000.00 from the safety box in Genevieve Henderson's name. On March 7, 2011, David Henderson signed a Stipulation for Forfeiture of Seized Property indicating that he owned the $96,691.82 in currency seized in connection with his arrest.

### III. DISCUSSION

The plaintiffs assert nine causes of action in the recently filed third amended complaint: (1) a Fourth Amendment violation for illegal search and seizure of the contents of Genevieve Henderson's safety deposit box; (2) a Fourth Amendment claim against defendant Williams for making false statements under oath in obtaining the search and seizure warrants; (3) a Fourth Amendment claim for unlawful entry and unreasonable search of Genevieve Henderson's first floor apartment; (4) an Eighth Amendment claim for unlawful entry into the home of Genevieve Henderson; (5) a Fourth Amendment claim for unlawful entry and search of Daniel Henderson's basement apartment; (6) a Fourth Amendment claim for illegal seizure of Daniel Henderson; (7) an Eighth Amendment violation for the excessive force used against Daniel Henderson during the execution of the search warrant; (8) a claim against the Meriden Police Department for violation of all identified constitutional rights; (9) a claim

against the City of Meriden for violation of the same constitutional rights.[3]

### A. Excessive Force

In the seventh cause of action, Daniel Henderson argues that the use of force against him violated his rights under the Eighth and Fourteenth Amendments. This claim is not cognizable for several reasons.

Claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop or other pre-arraignment seizure are analyzed under the Fourth Amendment's prohibition against unreasonable seizure of the person. See Graham v. Connor, 490 U.S. 386, 395 (1986) (claim that the police used excessive force in the course of an arrest or other pre-arraignment seizure of a free citizen should be analyzed under the reasonableness standard of the Fourth Amendment rather than as a substantive due process claim under the Fourteenth Amendment); Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) (Fourth Amendment standard applies through time of arraignment or formal charge). The Eighth Amendment protection against cruel and unusual punishment applies only after conviction. See Whitley v.

---

[3] In the Third Amended Complaint signed only by Daniel Henderson (Doc. No. 96), the parties assert ten state law claims. Because Genevieve Henderson failed to sign that Complaint, the court afforded her the opportunity to file a signed copy of the Complaint if she wished to pursue any of the claims her son had asserted on her behalf. See (Doc. No. 205). On March 11, 2013, the parties filed a Third Amended Complaint (Doc. No. 207) signed by both parties. The Complaint includes the same federal law claims as Doc. No. 96, but omits all state law claims. Because it appeared that the Hendersons accidentally filed the wrong Complaint, the court issued an Order directing them to file a copy of the Third Amended Complaint (Doc. No. 96) containing both of their original signatures or that of their attorneys, if they wished to pursue their state claims.

The Hendersons replied that they intended to remove their state claims. See (Doc. No. 209). However, Daniel Henderson stated that he claims that defendants assaulted him and committed battery, which he believes are claims under federal common-law. To the extent that Daniel Henderson believes he has raised claims for the torts of assault and battery, the court disagrees because (1) no such claims are included in the operative Complaint (Doc. No. 207); and (2) there is no federal common law claim for assault or battery. To the extent that Daniel Henderson's claims for assault and battery are encompassed in his seventh cause of action for excessive force, the court considers his claims below.

Albers, 475 U.S. 312, 318 (1986). Thus, Daniel Henderson's claims are cognizable only under the Fourth Amendment, which he has not asserted as a basis for his claim.

In addition, although defendants Milsagle, Baustien, Rivera, Scheen and Rodriguez participated in the search of 22 Lake Road, all four defendants searched the first and second floors of the residence. None of them searched the basement area where Daniel Henderson was living and where unidentified officers allegedly used excessive force against him. As none of the defendants had any contact with Daniel Henderson, there is no factual basis for a claim against them for use of excessive force. The defendants' Motion for Summary Judgment is granted as to the excessive force claim.

### B. Search Warrant - Residence

In the third and fourth causes of action, Genevieve Henderson argues that the defendants unreasonably searched her living area in violation of her Fourth, Eighth and Fourteenth Amendment rights. In the fifth and sixth causes of action, Daniel Henderson contends that the defendants violated his Fourth and Fourteenth Amendment rights by unreasonably searching his living area and seizing him there. Defendants Williams and Baustien prepared the affidavit to obtain the search warrant. Defendants Williams and Milsagle reviewed Middlefield town records concerning 22 Lake Road and determined that it was a single family residence. The plaintiffs contend that if information regarding the three separate apartments had been included in the search warrant affidavit, the warrant would not have issued for their living areas.

When reviewing the adequacy of a warrant, the court affords "considerable deference to the probable cause determination of the issuing magistrate." Walczyk v.

Rio, 496 F.3d 139, 157 (2d Cir. 2007). The court must determine whether the "totality of the circumstances" provided the magistrate "a substantial basis" to determine the existence of probable cause to issue to the warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). Here, the plaintiffs do not challenge the judge's decision to issue the warrant on the information contained in the affidavit, but argue that the defendants omitted important information from the affidavit that would have negated probable cause for issuance of the warrant.

Probable cause to search a particular place may be found "where a totality of circumstances indicates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" Walczyk, 496 F.3d at 156 (quoting Gates, 462 U.S. at 238). The court determines the constitutionality of the officers' actions in preparing a search warrant affidavit in light of the information available to them at the time they prepared the affidavit. See Maryland v. Garrison, 480 U.S. 79, 85 (1987).

The defendants contend that the available information supported their conclusion that the residence was a single-family home and, even if they were incorrect, they are protected by qualified immunity. Government officials performing discretionary functions are protected from liability for civil damages unless their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have been aware. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). The constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," although the exact issue need not have been previously decided. Anderson v. Creighton, 483 U.S. 635, 640 (1987). To establish a defense of qualified immunity, the defendant must establish that his acts did

not violate a constitutional right or, if a violation was shown, that the right was not clearly established at the time of the incident. See Pearson, 555 U.S. at 232-33 (setting forth qualified immunity test and holding that a court need not consider the questions in any particular order).

To evaluate whether a right is clearly established, the court must determine whether it would be clear to a reasonable official that his conduct in these circumstances was unlawful. See Saucier v. Katz, 533 U.S. 194, 202 (2001). The analysis focuses on cases from the Supreme Court and Second Circuit. See Williams v. Greifinger, 97 F.3d 699, 706 (2d Cir. 1996).

In the context of applying for a search warrant, the objective reasonableness standard will afford immunity to the defendant police officer unless a reasonably well-trained officer, in that officer's position, would have known that probable cause did not exist and that he should not have applied for the warrant. See Malley v. Briggs, 475 U.S. 335, 345–46 (1986). Here the analysis focuses on whether the defendants should have known that 22 Lake Road was a multi-family residence. See Maryland v. Garrison, 480 U.S. 79, 88-89 (1987) ("the validity of the search of respondent's apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable").

The tax assessor's record indicated "occupancy 3" and the defendants concede that they understand that to mean a three-family dwelling. See Defendants' Sept. 4, 2012 Supplemental Responses to Interrogatories, Doc. No. 178-2 at 28. The sewer tax bill indicates that there were 2.5 units in the house. On the other hand, the tax

assessor's records also identified the property as a single-family residence with in-law, and nothing else in the record indicates separate apartments. From the outside, the building appeared to be a single family home. However, there were three entrance doors in close proximity.

The defendants had information suggesting that David Henderson kept money or documents relating to his prostitution business at his residence. All available addresses for David Henderson were 22 Lake Road without any specific apartment designation. None of the three entrance doors were marked with an apartment number. The evidence indicates that the defendants learned just prior to executing the search warrant that the residence was divided into three living areas and that Genevieve Henderson lived on the first floor. There is no evidence presented to show that the defendants knew who lived in the basement living area. Nor is there evidence to show that the defendant were aware that there was no internal access from one living area to another until they entered the residence.

Based on this information, the court concludes that there is a genuine issue of material fact whether 22 Lake Road is a single-family residence and whether a reasonable officer would believe that 22 Lake Road was a single-family residence when the warrant affidavit was completed and, thus, whether the defendants had probable cause to seek a warrant for the entire dwelling. Both Motions for Summary Judgment are denied as to the claims in the third, fifth and sixth causes of action regarding search of the residence.

In the fourth cause of action, Genevieve Henderson argues that the search violated her Eighth Amendment rights. As Genevieve Henderson is not a prisoner, the

Eighth Amendment affords her no protection.  See Whitley, 475 U.S. at 318 (Eighth Amendment protection applies only after conviction).   Accordingly, the fourth cause of action is dismissed pursuant to 28 U.S.C. § 1915A for failure to state a cognizable claim.

      C.      Search Warrant - Safety Deposit Box and Seizure of Cash

Based on defendant Williams' affidavit, the defendants obtained a search warrant for safety deposit boxes at Wachovia Bank in the names of David and Genevieve Henderson.  The affidavit recited the history of surveillance on David Henderson's business and information provided by Ms. Kuhl, David Henderson's business associate.  Much of the information provided by Ms. Kuhl regarding records and money from the prostitution business had been verified.  Bank officials would not confirm Ms. Kuhl's specific information regarding the safety deposit boxes at Wachovia Bank.

In applying the totality of the circumstances test to determine whether a warrant was supported by probable case, the fact that police officers partially corroborated information provided by an informant may allow the officers to credit all of the information provided by that informant.  See U.S. v. Clark, 638 F.3d 89, 98 (2d Cir. 2011) (citing Illinois v. Gates, 462 U.S. 213, 237-38 (1983)).  The search warrant affidavit set forth Ms. Kuhl's oral statement that David Henderson may have a safety deposit box in his mother's name.  Ms. Kuhl had provided accurate information regarding the existence of cash and records of David Henderson's business at her apartment, in her safety deposit box and at a storage facility.  In light of the other verified information provided by Ms. Kuhl, the court concludes that this statement was sufficient to establish probable cause to search Genevieve Henderson's safety deposit

box. The defendants' Motion for Summary Judgment is granted, and the plaintiffs' Motion for Summary Judgment is denied, as to any claim challenging the issuance of the search warrant for the safety deposit boxes.

In addition to the propriety of the search, the plaintiffs also challenge the defendants' determination that the money in Genevieve Henderson's safety deposit box belonged to David Henderson. Neither party has presented sufficient evidence in support of their positions to warrant summary judgment on this claim.

The defendants' have provided a forfeiture acknowledgment form signed by David Henderson indicating that the money was his. The defendants also provide affidavits indicating that Ms. Kuhl told Officer Fonda that David Henderson kept money in his mother's safety deposit box and refer to the fact that David Henderson had the key to his mother's safety deposit box on his person when he was arrested.

The plaintiffs provide the affidavit of Genevieve Henderson in which she states the money was her "retirement." She also includes a hearsay statement that David Henderson signed the form under duress. See Doc. No. 178-3 at 1. The plaintiffs provide no admissible evidence to verify the hearsay. The plaintiffs provide a copy of the signature card for Genevieve Henderson's safety deposit box indicating that she is the only person authorized to access the box as well as David Henderson's unsworn statement that he never accessed her box or requested that his mother hold money for him. See Doc. No. 178-3 at 20, 28.

The parties have presented conflicting evidence regarding the ownership of the $90,000.00 taken from Genevieve Henderson's safety deposit box. Thus, there is a genuine issue of material fact regarding the ownership of the funds, and the Motions for

Summary Judgment are denied as to the claim regarding seizure of the funds.

      C.      <u>Truthfulness of Defendant Williams' Statements in Affidavits</u>

In the second cause of action, the plaintiffs argue that defendant Williams deliberately made false statements under oath in his affidavits supporting the search warrant request for the residence. Both parties base their argument on their assumption that the court will find in their favor on the claims regarding the search of the residence. The court has concluded above that there are genuine issues of material fact regarding the search warrant affidavit. Thus, the Motions for Summary Judgment are denied on this claim.

      D.      <u>Claims Against the City of Meriden and the Meriden Police Department</u>

The plaintiff include both the City of Meriden and the Meriden Police Department as defendants. These two entities are indistinguishable for purposes of determining municipal liability. Thus, the court considers together the claims in the eighth and ninth causes of action.

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978), the Supreme Court set forth the test for municipal liability. The municipality may be liable for allegedly unconstitutional acts of a municipal employee if the plaintiff was subjected to the denial of his constitutional rights as a result of an official policy or custom. See <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995). A municipality cannot be held liable under section 1983 solely on a theory of respondeat superior. See 436 U.S. at 694-95. There must be "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). This link must be established by more than mere allegation; the plaintiff must

show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Comm'rs Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997).

The only evidence submitted by the plaintiffs to support the municipal liability claim is copies of newspaper articles. See Doc. No. 178-4 at 19-26. Newspaper articles, however, are inadmissible hearsay and cannot be used to support a Motion for Summary Judgment. See Ladner v. City of New York, 20 F. Supp. 2d 509, 519 (E.D.N.Y. 1998) (newspaper article "inadmissible hearsay and unusable to defeat summary judgment"), aff'd, 181 F.3d 83 (2d Cir.1999)(unpublished table decision); see also Pooler v. Nassau Univ. Med. Ctr., 848 F. Supp. 2d 332, 351 n.14 (E.D.N.Y. 2012) (noting that plaintiff had submitted newspaper article, but no admissible evidence, on Monell claim and concluding that claim cannot survive summary judgment). As the plaintiffs in this case have failed to come forward with any admissible evidence in support of their claim, the plaintiffs' Motion for Summary Judgment is denied, and the defendants' Motion for Summary Judgment is granted as to the claim for municipal liability.

### E. Substantive Due Process Claims

In all of their causes of action, the plaintiffs specify certain constitutional amendments "and/or Fourteenth Amendment." If the reference to the Fourteenth Amendment is intended to reflect that Fourth and Eighth Amendments are applied to the States through the Fourteenth Amendment, such reference is proper.

If, however, the plaintiffs intend to assert separate substantive due process violations, their claims lack merit. "[T]o state a substantive due process claim, a plaintiff

15

must allege action by a governmental officer that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" See Bullock v. Gerould, 338 F. Supp. 2d 446, 451 (W.D.N.Y. 2004) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998)); see also Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002) (substantive due process claim requires conduct so 'brutal' and 'offensive to human dignity' as to shock the conscience). The plaintiffs' allegations in this case do not rise to that level. To the extent the plaintiffs are asserting a separate substantive due process claim, the defendants' Motion for Summary Judgment is granted as to that claim.

## IV.   CONCLUSION

The defendants' Motion for Summary Judgment (**Doc. No. 175**) is **GRANTED** as to Daniel Henderson's excessive force claim, contained in the seventh cause of action; any claim challenging the validity of the search warrant for the safety deposit boxes, included in the first cause of action; the claims for municipal liability, included in the eighth and ninth causes of action; and any claims based exclusively on the Substantive Due Process Clause of the Fourteenth Amendment and **DENIED** in all other respects. The plaintiffs' Motion for Summary Judgment (**Doc. No. 178**) is **DENIED**. The claim in the Fourth Cause of Action is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 13th day of May, 2013.

                                           /s/ Janet C. Hall
                                      Janet C. Hall
                                      United States District Judge